UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOSTER POULTRY FARMS, INC., and FRESNO FARMING, LLC,<br><br>             Plaintiffs,<br><br>     v.<br><br>SUNTRUST BANK,<br><br>             Defendant.<br>_____<br>SUNTRUST BANK,<br><br>         Counter-Claimant,<br><br>     v.<br><br>FOSTER POULTRY FARMS, INC., and FRESNO FARMING, LLC,<br><br>         Counter-Defendants.<br>_____ | 1:04-cv-5513 OWW SMS<br><br>MEMORANDUM AND DECISION RE GRANTING DEFENDANT SUNTRUST'S MOTION FOR CLARIFICATION AND DENYING MOTION FOR DISCOVERY NOM AND LEAVE TO SUBMIT SUPPLEMENTAL EVIDENCE (Doc. 223) |

On January 18, 2008, Defendant SunTrust filed a post-trial Motion for Clarification, for Discovery Nom and Leave to Submit Supplemental Evidence. (Doc. 216, Motion).  Oral argument on this motion was heard on March 31, 2008.

Defendant SunTrust in its memorandum in support of its Motion, requests clarification of the term "interest" as used in the Court's January 11, 2008 Order. (Doc. 214, Jan 11 Order)[1]

---

[1] This case came before the Court for trial commencing September 18, 2007, in Courtroom 3, the Hon. Oliver W. Wanger presiding.  The Court heard evidence during a six-day bench trial

1

SunTrust contends that not all interest received from the Trusts[2] was profit gained by SunTrust.

Plaintiffs filed their Calculation of Damages on January 21, 2008, setting forth their calculations of the interest earned by SunTrust from March 14, 2004, pursuant to the Jan. 11, 2008 Order, to aid in the calculation of the amount of profit to be disgorged by SunTrust. Plaintiffs also argue that SunTrust's filing of its Motion should not delay entry of judgment because this is the first time in the litigation that SunTrust has attempted to present an alternative damage calculation, in the guise of a motion for "clarification" that would greatly reduce the amount of damages SunTrust would have to pay. (Doc. 217 and 225)[3]

The following are the relevant findings of fact and conclusions of law from the Jan. 11, 2008 Order relating to disgorgement damages of the interest earned by SunTrust on the Term Loans[4]:

---

commencing September 18, 2007 through September 27, 2007 and entered its Findings of Fact and Conclusions of Law on January 14, 2008. (Doc. 214) Please see the Jan 14 Order for the full description of the facts of this case.

[2] Robert D. Zacky and Lillian D. Zacky Trust ("Zacky Trust") and the Brand Family Trust ("Brand Trust") (collectively the "Trusts"), owners of Zacky Farms, Inc.

[3] Plaintiffs filed their opposition to Defendant SunTrust's Motion on March 3, 2008. (Doc. 225). Defendant SunTrust filed its reply to Plaintiffs' Opposition on March 17, 2008. (Doc. 232).

[4] Two Term Loans provided to the Zacky Trust and the Brand Trust by SunTrust in August 2002 totalling approximately $85

> 196. During the period from August 14, 2002, the date the 2002 monetizing Term Loans were originally made to the Trusts to the date of the final repayment on October 9, 2006, SunTrust earned $6,004,886.97 in interest on the 2002 monetization Term Loans to the Trusts. Steven Butler, qualified as Plaintiffs damages expert at trial, testified to that amount. 9/20 Trial Tr., p. 64:15-19." Findings of Fact, ¶ 196.
>
> 117. Damages shall be calculated by taking the amount of interest and fees earned by SunTrust on the 2002 Term Loans from the date this lawsuit was filed, March 15, 2004 through the end of the term of the Letters of Credit on October 9, 2005." Conclusions of Law ¶ 117.
>
> 2. Plaintiff FPF shall recover as disgorgement and shall submit the calculation of damages awarded for any interest and fees earned on the 2002 Term Loan to the Trusts by Defendant SunTrust starting from the time of filing the lawsuit on March 15, 2004 through October 9, 2006." Conclusion, ¶ 2.

On January 21, 2008, Plaintiffs' filed their calculation of damages pursuant to this Court's order (interest and fees paid by the Trusts to SunTrust plus prejudgment interest, calculated separately for each quarterly interest payment). (Doc. 217, Damage Calculations)  The calculated damages equal $3,110,530.40, plus prejudgment interest of $979,344.87 (through January 22, 2008), for a total of $4,089,875.27, plus prejudgment interest of $852.20 for each day after January 22, 2008 up to and including the day judgment is entered.  Defendant offers no corrections to these specific calculations instead its motion is on differentiating between "margin interest" and "LIBOR interest" representing the alleged spread between the cost of money loaned to the Trusts and the gross interest earned on the Term Loans

---

million.  SunTrust loaned Zacky Trust $77,115,161.42, under a Term Loan by note, dated as of August 14, 2002, (DX-201-1), and the Brand Family Trust $8,220,939.98, under a Term Loan by notes, dated as of August 14, 2002 (DX-202-1).

3

from which Defendant asserts net profit is calculated on the Term Loans.

Plaintiffs contend that SunTrust cannot seek to amend the Findings of Fact under Rule 52(b) based on post-trial evidence not in the trial record. Federal Rule of Civil Procedure 52 states:

> (b) Amended or Additional Findings. On a party's motion filed no later than 10 days after the entry of judgment, the court may amend its findings--or make additional findings--and may amend the judgment accordingly. The motion may accompany a motion for a new trial under Rule 59.

Fed. R. Civ. P. 52(b). The Ninth Circuit has recognized that Rule 52(b) applies to motions to amend the findings prior to entry of judgment. *Calculators Hawaii, Inc. v. Brandt, Inc.*, 724 F.2d 1332, 1335 (9th Cir. 1983) ("We agree with Professor Moore that the language of 52(b) suggests that 'a motion made after the court has indicated the action that it will take but before entry of the judgment embodying that action is timely.'") The decision of whether to grant or deny a motion to amend or enlarge the findings is within the discretion of the trial court. 9C Wright & Miller, Federal Practice and Procedure: Civil 3d § 2582, at 352 (3d ed. 2008). Defendant did not characterize its Motion as a motion under Federal Rules of Civil Procedure 52(b). At oral argument SunTrust conceded that the motion is brought under Fed. R. Civ. Proc. 52.

Under Rule 52(b), parties have been permitted to seek an amendment of the Court's findings of fact to correct manifest errors of law or fact, or in some limited situations to present newly discovered evidence, but such a motion is not granted if it

4

is based on arguments that either were, or could have been raised at any point prior to the Court's entry of judgment. *See Granat v. Schoepski*, 272 F.2d 814, 815 (9th Cir. 1959) ("Plaintiffs concede that the trial court's findings of fact may not be set aside unless clearly erroneous (Rule 52(b), Federal Rules of Civil Procedure, 28 U.S.C.A.)."); *Davis v. Mathews*, 450 F.Supp. 308, 318 (E.D. Cal. 1978)("Motions under Rule 52(b) are primarily designed to correct findings of fact which are central to the ultimate decision; the Rule is not intended to serve as a vehicle for a rehearing."); *Diocese of Winona v. Interstate Fire & Cas. Co.*, 89 F.3d 1386, 1397 (8th Cir. 1996) (noting that a party seeking to amend a judgment under Rule 52(b) cannot raise arguments that could have been raised prior to the issuance of the judgment).

"This is not to say, however, that a motion to amend should be employed to introduce evidence that was available at trial but was not proffered, to relitigate old issues, to advance new theories, or to secure a rehearing on the merits. [citation] Except for motions to amend based on newly discovered evidence, the trial court is only required to amend its findings of fact based on evidence contained in the record.  To do otherwise would defeat the compelling interest in the finality of litigation." *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir. 1986); *Diebitz v. Arreola*, 834 F.Supp. 298, 302 (E.D. Wis. 1993) ("However, recognized grounds for such a motion include 'manifest error of fact or law' by the trial court, 'newly discovered evidence,' or 'a change in the law.'"); *Lyons v. Jefferson Bank & Trust*, 793 F.Supp. 989, 991 (D. Colo. 1992).  As the Fifth

Circuit Court stated in *Fontenot* in regards to 52(b) motions: "Blessed with the acuity of hindsight, [a party] may now realize that it did not make its initial case as compellingly as it might have, but it cannot charge the District Court with responsibility for that failure through [a] Rule 52(b) motion." 791 F.2d at 1220.[5]

Here, Plaintiffs were permitted to provide post-trial evidence in the form of calculations of disgorgement interest earned on the Trusts' Term Loans for the period specified. This did not entail receipt of any new evidence, rather calculation of profit from record evidence. Defendant is entitled to respond and rebut the evidentiary calculation to provide a legally accurate calculation of disgorgement damages. This means that defendant may offer alternate damage calculations so long as based on admitted evidence of record.

SunTrust identifies two documents that it claims were presented as evidence at trial demonstrating that the interest rate on the 2002 Term Loans was LIBOR plus a spread of 60 basis

---

[5] 52(b) motions are often filed with 59(e) motions. A motion under Federal Rules of Civil Procedure 59(e) also provides for altering or amending an order, but it must be filed no later than 10 days after the entry of judgment:

> (e) Motion to Alter or Amend a Judgment. A motion to alter or amend a judgment must be filed no later than 10 days after the entry of the judgment.

Fed. R. Civ. P. 59(e). "The history of Rule 59(e) shows that 'alter or amend' means a substantive change of mind by the court." *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 527 (9th Cir. 1983). Defendant does not proffer any argument pursuant to Fed. R. Civ. P. 59(e).

6

points and SunTrust earned only the "margin interest" of the total amount of interest charged to the Trusts.  SunTrust argues the interest should be separated for accounting purposes into "LIBOR interest" and "margin interest."  The first document cited as evidence is JX-7, Credit Package for the 2002 Term Loans to the Trusts, dated May 30, 2002.  The Term Loans were entered into on August 14, 2002.  SunTrust does not describe where in JX-7 the information can be found to support its argument.  JX-7, the Credit Package document, is an internal SunTrust document that was prepared by Thomas Parrott and approved by Senior Credit Officers Wayne Riess and Woody Woodring.  A review of this document reveals on page III-2 the description of Pricing and Fees: "A,B [the two loans to the Trusts]  LIBOR + 60  Spread fixed over the life of the loans  Upfront Fee: 25 bps" (JX -7, III-2).

The second document is JX-53, consisting of almost a thousand pages of documentation that appear to concern the interest and fees paid under the Term Loans, including bank statements from each of the Brand and Zacky Trusts, and spreadsheets listing margin and LIBOR interest breakdowns, and other financial documents.[6]  Neither party discussed or described this exhibit at trial and SunTrust does not now describe or explain how JX-53 can be utilized to reach the net figure SunTrust contends represents its profit on the Term Loan subject

---

[6] JX-53 is a joint exhibit and all joint exhibits have been entered into evidence. *See* 9/19 Trial. Tr., pp. 59:4-13 and 119:14-19.

to disgorgement.[7]

SunTrust additionally submits a two-page declaration by Hugh Brown, Director of SunTrust Bank, to describe the difference between the interest charged to the Trusts and the interest earned as profit by SunTrust, the "margin interest." Mr. Brown did not testify at trial nor was he designated as a witness in the final pretrial order. *See* Doc. 165. His description of margin interest vs. LIBOR interest was never introduced or mentioned at trial.

Mr. Brown states the calculated total "margin interest" paid to SunTrust by the Trusts is approximately $750,000. But Mr. Brown in his declaration provides no supporting calculation or further description of how to calculate net profit on a loan, other than to declare that "[i]t is generally accepted banking practice that LIBOR is used to reflect banks' approximate cost of funding on all U.S. dollar-denominated loans that are priced using LIBOR as a reference rate. LIBOR reflects the approximate cost of funds or borrowing costs to SunTrust Bank on LIBOR-based loans, including the funds that were loaned to the Trusts on the

---

[7] While, the Witness and Exhibit List does not show JX-53 as admitted into evidence, it was entered into evidence. Early in the trial all joint exhibits were received into evidence. *See* Doc. 210, Witness and Exhibit List After Trial. Plaintiffs lodged exhibits JX 1-60 with the Court on September 11, 2007 prior to the start of trial on September 18, 2007. In Defendant Suntrust's pre-trial Notice of Potential Trial Witnesses and Exhibits for Thursday, September 20, 2007, it listed JX-53 as an exhibit to be used in conjunction with trial witnesses Marcy Lyons and Tommy Parrott. JX-53, however was not referred to in the examination of trial witnesses Marcy Lyons and Tommy Parrott. Doc. 195.

2002 Term Loans." Doc. 223, Brown Decl., ¶ 4.  Mr. Brown then concludes with "SunTrust's profit or 'gain' with respect to each quarterly interest payment made by the Trusts was only that portion of each payment which represented the 60 basis points 'spread' also referred to as the 'margin interest.'  The remainder of each quarterly interest payment represented LIBOR portion which in effect represented SunTrust's costs of borrowing to fund the 2002 Term Loans." *Id.*

This is the first time this information has been provided in this suit, well after the six-day bench trial in September 2007.  Such information, if provided at trial to challenge Plaintiffs' damage expert's calculation of damages resulting from the Trusts' Term Loans, could have been addressed and properly challenged by Plaintiffs.  The proffered testimony of Mr. Brown bears directly on the issue of net profit.

Plaintiffs argue that SunTrust should not be permitted to introduce new evidence after trial, which is expert testimony that could have been provided at trial.  SunTrust has no excuse for its failure to designate any expert or to provide any evidence or argument on damages before or during trial.  Plaintiffs further argue that SunTrust has been fully aware that Plaintiffs sought as damages all the interest SunTrust from the monetization through the Trusts' Term Loans since at least April 25, 2005 - the date of Plaintiffs' expert, Mr. Butler's first report.[8]  SunTrust did not challenge Mr. Butler's calculations

---

[8] **Plaintiffs claim that at least since April 28, 2005, SunTrust has been fully aware that Plaintiffs sought damages, at a minimum, for all interest earned from the monetization loans.**

9

throughout the course of the litigation nor did it designate a rebuttal expert witness, or any other witness to testify as to damages.

Plaintiffs cite both SunTrust's opening argument and closing argument in which Defendant steadfastly argued the all or nothing position that SunTrust had not breached the contract and that Plaintiffs suffered no damages and offered no alternative theories of damages:

> [MR. COX:] I'll touch a minute on disgorgement. As we've made the point, Your Honor, that is an equitable remedy that we believe is not warranted here. There has been no actual injury, harm or damage to the plaintiff. There is no -- in the absence of showing actual harm or damage, there is no basis for -- a breach of contract case for seeking disgorgement on the fees of the term loans or the fees that were paid on the letter of credit, Your Honor.

9/27 Trial Tr. at 94 (SunTrust closing argument). And Plaintiffs cite to the January 11, 2008 Order, Findings of Facts and Conclusions of Law:

> 199. SunTrust offered no alternative damage calculations or theories.

Doc. 214, Order, Findings of Fact 199. Plaintiffs recognize that

---

Mr. Butler's report, dated April 28, 2005 states:

> In connection with the monetization of the Fresno Notes, SunTrust breached its Confidentiality Agreements with Foster and Fresno as well as the fiduciary duty SunTrust owed to Foster and Fresno. These breaches have resulted in SunTrust being unjustly enriched with respect to any fees, interest, or other consideration stemming from the monetization transaction.

*See* PX-101 (Butler report) at 7 (footnote omitted) (emphasis added). PX-101 is not entered into evidence.

10

1  declarant, Hugh Brown, was not listed as a witness in the Final
2  Pretrial Order. (Doc. 165, p. 29-31, ¶ IX. Witnesses)  Defendant
3  did not designate Mr. Brown or any other expert witness to
4  testify at trial pursuant to Rule 26(a)(2), and did not do so
5  under the procedures and timing prescribed in the Court's
6  Scheduling Order, dated August 12, 2004. (Doc. 27, p. 6, ¶ IX.2)
7  ("2. The Plaintiffs are directed to disclose all expert
8  witnesses, in writing, on or before April 29, 2005.  Any counter-
9  designation of experts will be made by Defendants on or before
10 May 27, 2005.")  Plaintiffs argue that Mr. Brown's opinion that
11 SunTrust followed "generally accepted banking practice" lies
12 plainly within the province of expert testimony because knowledge
13 of banking practices is specialized knowledge under Fed. R. Evid.
14 202.

15      Plaintiffs also disagree with SunTrust's assertion that net
16 profit on the 2002 Term Loans is limited to "margin interest"
17 (*i.e.* the 60 basis points spread over the LIBOR rate cost of
18 funds) and considers this a factual question which it disputes.
19 Plaintiffs state they will provide contrary evidence if the need
20 should arise but do not do so in this motion.

21      Plaintiffs also argue that SunTrust cannot show that it has
22 substantial justification for nor that no prejudice will result
23 from its failure to disclose Mr. Brown or any other person as a
24 damages witness, the standard necessary under Federal Rules of
25 Civil Procedure 37(c)(1) to permit the use of undisclosed
26 testimony.

27      Federal Rule of Civil Procedure 37(c)(1) states:
28           (c) Failure to Disclose, to Supplement an Earlier

```
                Response, or to Admit.
                  (1) Failure to Disclose or Supplement. If a party
                fails to provide information or identify a witness as
                required by Rule 26(a) or (e), the party is not
                allowed to use that information or witness to supply
                evidence on a motion, at a hearing, or at a trial,
                unless the failure was substantially justified or is
                harmless.  In addition to or instead of this
                sanction, the court, on motion and after giving an
                opportunity to be heard:
                     (A) may order payment of the reasonable expenses,
                     including attorney's fees, caused by the failure;
                     (B) may inform the jury of the party's failure;
                     and
                     (C) may impose other appropriate sanctions,
                     including any of the orders listed in Rule
                     37(b)(2)(A)(i)-(vi).
```

Fed. R. Civ. P. 37(c)(1). Plaintiffs argue that SunTrust made a strategies choice by not disclosing any expert witnesses nearly three years ago and provides no justification, let alone substantial justification for its failure to provide Hugh Brown's testimony at trial, or any evidence regarding net profit on the Trusts' Term Loans, before or during trial. Plaintiffs contend that they have invested extensive resources in the trial and it would be extremely prejudicial to Plaintiffs and to the orderly administration of justice to have to address the issue for the first time after trial. Defendant SunTrust does not bring its motion pursuant Fed. R. Civ. P. 37(c)(1).

Defendant had knowledge Plaintiffs were seeking disgorgement damages of all interest earned by SunTrust on the Term Loans, long before trial, and it had knowledge when Plaintiffs presented their expert testimony of Steven Butler regarding his calculations of unjust enrichment damages at trial. "The second element of damages I computed were really unjust enrichment to SunTrust as opposed to damages specifically to Foster." 9/20 Trial Tr., p. 63: 21-23, Testimony of Mr. Butler. The

12

1  calculation of that figure was not challenged at trial, except by
2  omnibus, non-specific denial, and SunTrust provided no rebutting
3  expert testimony evidence, nor arguments about the amount of
4  unjust enrichment damages.  The following are excerpts from the
5  trial transcripts regarding Mr. Butler's testimony on
6  disgorgement damages, demonstrating SunTrust had knowledge of
7  Plaintiffs' damage theory, but nonetheless failed to rebut or
8  inquire further about the calculation of disgorgement damages.
9  Mr. Butler was on the witness stand September 20, 2007 and
10 September 21, 2007:

    [THE COURT]: And so I will permit him to testify as to
    damage calculations as long as the damage calculations are
    based on one, some recognized theory or measure of recovery
    for the calculation of damages, and that the underlying
    facts that are to be assumed by the expert in making that
    opinion are in evidence or will be proved in evidence to
    provide the foundation for the expert opinion, and that the
    methodology is reasonably recognized among commercial
    bankers and other people in the banking industry who would
    be able to determine the nature and extent of any economic
    harm that would flow from or be caused by any kind of a
    breach of a generally accepted banking practices or
    standards in any specific requirements of the agreements in
    this case for performance, as long as that does not require
    a legal interpretation. Is everybody clear about my ruling?
    MR. COX: Yes, Your Honor.
    MR. ZARLENGA: Yes, Your Honor.
    ---
    [THE COURT] Q. All right. And in terms of the other element
    of damages, what was the other element the of damages that
    you computed?
    [MR. BUTLER] A. The second element of damages I computed
    were really unjust enrichment to SunTrust as opposed to
    damages specifically to Foster.
    MR. COX: Objection Your Honor. I think this goes beyond what
    the Court has indicated Mr. Butler would be permitted to
    testify to.
    MR. ZARLENGA: I don't agree with that at all. This is
    precisely our main element of damages in the case. This is
    what the two cases --
    THE COURT: The Court indicated that I have not decided as a
    matter of law. I denied the motion in limine because there
    is an unjust enrichment case from California in the context
    of, if you will, confidentiality of trade secrets

```
agreements. There is also a covenant not to compete case in
New York. As I said, I'm going to permit the testimony, and
I will give it such weight and will determine what if any
value it is ultimately to receive. Overruled.
BY MR. ZARLENGA:Q. Mr. Butler, you may continue.
[MR. BUTLER] A. I calculated damages based on unjust
enrichment to SunTrust, which comprised the interest paid by
both Zacky and Brand to SunTrust Bank for the notes that
were monetized.  There are three numbers which added
together come to approximately $6 million.
[THE COURT] Q. All right. So we'll call that unjust
enrichment and tell me the amount again?
---
THE COURT: Well, I've got 6,004,886.97 for the interest.
THE WITNESS: I'm sorry, sir. 6 --
THE COURT: 004,886.97.
BY MR. ZARLENGA:Q. So one more time?
THE WITNESS: 6 million 4 thousand --
THE COURT: 886.
THE WITNESS: 886.97.
Q. 97?
A. 97.
Q. And tell me how you reached that number? What data did
you use?
A. There are three components.  They're listed on exhibit B
in my updated report specifically number 9 which was the
interest paid to SunTrust by both Zacky and brand. There's a
third piece of that total number, approximately $223,000,
which is an estimate on my part because I didn't have the
actual payments made.  So I made that estimate based on
prior quarterly payments and used that for a proxy, so to
speak, for the five quarters that I did not have data for,
so that is subject to being verified.
```

9/20 Trial Tr., p. 30:23 - 31:14, 63:19-25 - 64:1-25, 65:9-25 - 66:1-5.

```
[MR. COX] Q. Any other damages to Fosters that -- that you
were asked to consider?
[MR. BUTLER] A. The only other damage calculation I made was
unjust enrichment to SunTrust. Based on the August '02
transaction. Those are the two elements of damages I was
asked to look at.
[MR. COX] Q. All right sir. Now, the $6,004,886.97, that's
money that is -- as I understand it was -- you calculated
was received by SunTrust with respect to the term loans that
were made to the Zackys and the Brands.
[MR. BUTLER] A. Correct.
[MR. COX] Q. That is not money that Fosters paid or came out
of pocket for in any other respect is it?
[MR. BUTLER] A. That's correct.
```

9/21 Trial Tr. p. 67:9-25.

SunTrust argues that it seeks clarification of the term

14

"interest" because the proper measure of damages of any disgorgement award is net profits, not gross revenue. The damages awarded for breach of the Confidentiality Agreement was as follows from the Jan. 11, 2008 Order:

> 108. ... Plaintiff FPF's losses are difficult to assess and quantify, however, SunTrust's gains from the breach of the Confidentiality Agreement are specifically quantifiable and represented by the amount of interest and fees earned under the Term Loans to the Trusts. Conclusions of Law, ¶ 108.
>
> 117. Damages shall be calculated by taking the amount of interest and fees earned by SunTrust on the 2002 Term Loans from the date this lawsuit was filed, March 15, 2004 through the end of the term of the Letters of Credit on October 9, 2005. Conclusions of Law, ¶ 117.

Defendant SunTrust raises these arguments for the first time in this motion, rather than at the trial, where these arguments should have been raised and all relevant evidence presented for consideration by the Court. This juxtaposes the calculation of net profit, the generally accepted measure for the equitable remedy of disgorgement damages, against the total failure of SunTrust to address the issue before or during trial until after it lost on the issue of breach and damages at trial. However, unjust enrichment is defined as a "benefit obtained from another, not intended as a gift and not legally justifiable, for which the beneficiary must make restitution or recompense." Blacks Law Dictionary (8th ed. 2004), unjust enrichment. "It is widely recognized that disgorgement is a remedy intended to prevent a wrongdoer from unjust enrichment," *Eckard Brandes, Inc. v. Riley*, 338 F.3d 1082, 1088 (9th Cir. 2003), therefore disgorgement is limited to the amount of the unjust enrichment.

Certain of the decisions relied on in the Jan. 11, 2008

15

Order limit damages to the profit earned by the breaching party as the measure of damages.  In *Snepp v. U.S.*, 444 U.S. 507, 515-15 (1980), a constructive trust was placed on all profits of a former CIA employee after it was determined that the former employee published unreviewed material in violation of his fiduciary and contractual obligation to submit any material to the CIA for review prior to publication.  The court noted its concern with granting damages that amount to punishment: "And since the remedy reaches only funds attributable to the breach, it cannot saddle the former agent with exemplary damages out of all proportion to his gain." *Snepp*, 444 U.S. at 515-15.

    *Y. J. D. Restaurant Supply Co., Inc. v. Dib*, 98 Misc.2d 462 (N.Y. Supp. Ct. 1979), cited in the Jan. 11, 2008 Order, concerned a breach of a non-competition agreement.  The court awarded plaintiff the profit the defendant reaped from its breach of the covenant not to compete.  Defendant had sold plaintiff its business and as part of the agreement, agreed not to compete for a three-year period within a five-block radius.  The defendant did not honor the covenant not to compete and opened another business within the prohibited time period and location.  But prior to trial, defendant sold the second business for $250,000, and *testified* to expenses and costs of running the business in the amount of $214,500, resulting in a profit of $35,500.00, which was awarded to the plaintiff.  Here, SunTrust provided no testimony at trial on the expenses and costs involved in lending money to the Trusts, and the one possible exhibit, JX-53, admitted into evidence, is a voluminous exhibit consisting of pages and pages of financial spreadsheets that do not clearly

16

provide an indication of costs and expenses involved in lending to the Trusts.

Unjust enrichment is an equitable remedy that prohibits a party from retaining the benefit it unlawfully received. If the total interest and fees paid by the Trusts to SunTrust do not equal the benefit retained by SunTrust because SunTrust only retained the "margin interest" then the disgorgement damages would be equal to exemplary damages -- beyond the purpose of awarding unjust enrichment damages. However, SunTrust presented no such argument at trial. Defendant had a fair opportunity to present its defense at trial. The granting of this motion is unjustified it requires additional testimony or other financial evidence. If the calculation of net profit can be made from the financial information about the loans that is in evidence, this will be equitable, as disgorgement damages are to deny the unjust profit, not to punish.

Under the totality of the circumstances, the Defendant presented evidence and tried the case on the basis of an all or nothing strategy by denying that any breach of contract existed or that any damages were recoverable. SunTrust consciously elected not to offer an expert or any calculation of net profits. It cannot do so now. SunTrust must be held to its informed choice and thus forecloses the reopening of evidence. However, disgorgement is an equitable remedy. To do equity, if the financial data as evidence allows the calculation of net profits to be made without the introduction of expert testimony or any new evidence, defendant will be permitted to explain from record evidence how the calculation is made and how to calculate to

17

1  determine net profit.  No new evidence is permitted.

## CONCLUSION

For all the reasons provided, Defendant SunTrust's Motion for Discovery Nom is DENIED, its Motion for Clarification is GRANTED and its Motion for Leave to Submit Supplemental Evidence is DENIED.  Defendant may submit its supplemental calculation of net profit with record references, in accordance with this decision within (5) five days following service by the clerk of court of this decision.  Plaintiffs may submit any opposition to Defendant's supplemental briefing within (5) five days following filing of Defendant's calculation.  Defendant shall submit an order consistent with this decision, within five (5) days following service by the clerk of court of this decision.

IT IS SO ORDERED.

Dated:   **May 2, 2008**　　　　　　　　　　　／s／ **Oliver W. Wanger**
　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE