UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOSTER POULTRY FARMS, INC., and FRESNO FARMING, LLC,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>SUNTRUST BANK,<br><br>　　　　Defendant.<br>_____<br>SUNTRUST BANK,<br><br>　　　Counter-Claimant,<br><br>　　v.<br><br>FOSTER POULTRY FARMS, INC., and FRESNO FARMING, LLC,<br><br>　　　Counter-Defendants.<br>_____ | 1:04-cv-5513 OWW SMS<br><br>MEMORANDUM AND DECISION RE DENYING PLAINTIFFS' MOTION FOR AN AWARD OF EXPENSES INCLUDING ATTORNEY'S FEES PURSUANT TO FRCP 37(c)(2) (Doc. 226) |

Plaintiffs move for an award of expenses and attorney's fees pursuant to Fed. R. Civ. P. 37(c)(2). (Doc. 223, Motion, filed March 7, 2008). Defendant filed an opposition to Plaintiffs' Motion on April 4, 2008. (Doc. 233, Opposition). Plaintiffs filed their reply to Defendant's Opposition on April 16, 2008 (Doc. 237, Reply) Oral argument on this motion was heard on May 5, 2008.[1]

---

[1] This motion references terms and facts contained in the Findings of Fact and Conclusions of Law, entered on January 14,

1

After hearing evidence during a six-day bench trial commencing September 18, 2007 through September 27, 2008, Findings of Fact and Conclusions of Law were entered in this matter on January 14, 2008. (Doc. 214, Jan. 14 Order) The Findings of Fact and Conclusions of Law concluded there was a breach of contract by Defendant SunTrust under the Letters of Credit and a breach of the Confidentiality Agreement:

> 29. In conclusion, Plaintiffs have proved that SunTrust was not a "holder of the Notes in their entirety (but not in part)" in the monetization transaction. Conclusions of Law ¶ 29.
>
> 106. ...All of these facts establish that SunTrust breached the Confidentiality Agreement by using financial and proprietary information of FF and FPF, the purpose was not disclosed to Plaintiffs although authority for more limited financial information [was] authorized for a monetization transaction. Conclusions of Law ¶ 106.

Plaintiffs argue that they are entitled to an award of their expenses (including attorney's fees) incurred to prove these facts at trial, a total of $752,932.08, pursuant to Federal Rules of Civil Procedure 37(c)(2).² Plaintiffs argue that they served

---

2008, after a six-day bench trial in this suit. *See* Doc. 214, Jan. 14 Order for a full explanation of facts and terms referenced in this motion.

² Plaintiffs are seeking $752,935.08 in fees and expenses in their Rule 37(c)(2) Motion. This amount includes expenses and fees incurred by Plaintiffs' counsel to prove certain requests for admission at trial after Defendant allegedly provided insufficient responses to requests nos. 103, 154-56.

Defendant argues that Plaintiffs have not provided sufficient evidence to make a fee award under Rule 37(c) because Plaintiffs have not offered a single invoice for any attorney and rely instead on the Declaration of Ethan Andelman which states he reviewed all of Plaintiffs' attorney fee bills. (Doc. 228, Decl. Andelman) After SunTrust drew the shortcoming to Plaintiffs'

2

several requests for admission (Nos. 103 and 154-156) to
establish the above findings, which, on their own, establish
SunTrust's liability; *e.g.* that SunTrust referred to Foster
Farms' confidential information in the course of the monetization
transaction and SunTrust was not a holder of the LTPM Notes, but
SunTrust denied these requests.

Federal Rules of Civil Procedure 37(c)(2) states:

> (c) Failure to Disclose, to Supplement an Earlier
> Response, or to Admit.
>  (2) Failure to Admit. If a party fails to admit what
>  is requested under Rule 36 and if the requesting
>  party later proves a document to be genuine or the
>  matter true, the requesting party may move that the
>  party who failed to admit pay the reasonable
>  expenses, including attorney's fees, incurred in
>  making that proof. The court must so order unless:
>    (A) the request was held objectionable under Rule
>    36(a);
>    (B) the admission sought was of no substantial
>    importance;
>    (C) the party failing to admit had a reasonable
>    ground to believe that it might prevail on the
>    matter; or
>    (D) there was other good reason for the failure
>    to admit.

Fed. R. Civ. P. 37(c)(2). "[R]ule 37(c) is intended to provide
posttrial relief in the form of a requirement that the party
improperly refusing the admission pay the expenses of the other

---

attention, Plaintiffs filed under seal their attorney's fees' and
expenses' invoices from Howrey LLP, dated November 15, 2004
(entries starting at October 1, 2004), through February 22, 2008
(entries through January 14, 2008). (Doc. 228, Decl. MacLeod,
Exhibit F). Plaintiffs contend that they should be awarded
nearly all expenses they incurred after SunTrust responded to
these requests, but assume conservatively that one-third of their
fees and expenditures after October 1, 2004, were directed
towards proving each of the damages issues (Breach of
Confidentiality Agreement and Breach of Credit Agreement).

3

side in making the necessary proof at trial." Fed. R. Civ. P. 37(c) advisory committee's notes (1970 Amendment). "Enforcement encourages attorneys and parties to identify undisputed issues early to avoid unnecessary costs. Failure to identify those issues wastes the resources of parties and courts." *Marchand v. Mercy Medical Center*, 22 F.3d 933, 936 (9th Cir. 1994); *see also Campbell v. Spectrum Automation Co.*, 601 F.2d 246 (6th Cir. 1979) (knowledge of sales of patented device more than one year prior to patent application was brought to party's attention well in advance of request of admission that party did not admit, thus justifying 37(c) award of expenses). Expenses recoverable are those that flow directly from denial. *Marchand*, 22 F.3d at 939. Recoverable expenses include fees and costs "incurred in proving the truth of a matter where the other party refused to admit the matter." *Comeaux v. Brown & Williamson Tobacco Co.*, 915 F.2d 1264, 1275 (9th Cir. 1990).

The relevant requests for admission by Plaintiffs and responses by SunTrust are as follows:

<u>No. 103</u>

> Request for Admission No. <u>103</u>: Admit that during the course of the Monetization, SunTrust and its agent(s) referred to Plaintiffs' confidential financial information in their possession.
>
> Response to Request No. <u>103</u>: Denied.

(Doc. 228, Andelman Decl., Exhibit A, Plaintiffs' First Set of Requests for Admission to SunTrust (1-108), No. 103, dated September 3, 2004 and Exhibit B, Defendant SunTrust Bank's Responses to Plaintiffs' First Set of Requests for Admission, No. 103, dated September 29, 2004.)

**Nos. 154-156**

  **Request for Admission No. 154**: Admit that SunTrust is not the Holder of the Long Term Purchase Note in the Principal Amount of $1,477,464.99.

  **Response to Request No. 154**: Subject to and without waiving General Objection No. 1 and the additional General Objections, Defendant responds that it is the "holder" of the Long Term Purchase Note in the Principal Amount of $1,477,464.99 as "holder" is used in paragraph 6 of the Letter of Credit (attached as Exhibit C to the Credit Agreement).

  **Request for Admission No. 155**: Admit that SunTrust is not the Holder of the Long Term Purchase Note in the Principal Amount of $92,726,438.00.

  **Response to Request No. 155**: Subject to and without waiving General Objection No. 1 and the additional General Objections, Defendant responds that it is the "holder" of the Long Term Purchase Note in the Principal Amount of $92,726,438.00 as "holder" is used in paragraph 6 of the Letter of Credit (attached as Exhibit C to the Credit Agreement).

  **Request for Admission No. 156**: Admit that SunTrust is not the Holder of the Long Term Purchase Note in the Principal Amount of $10,472,535.01.

  **Response to Request No. 156**: Subject to and without waiving General Objection No. 1 and the additional General Objections, Defendant responds that it is the "holder" of the Long Term Purchase Note in the Principal Amount of $10,472,535.01 as "holder" is used in paragraph 6 of the Letter of Credit (attached as Exhibit C to the Credit Agreement).

(*Id.*, Exhibit C, Plaintiffs' Third Set of Requests for Admission to SunTrust (1-108), Nos. 154-156, dated December 13, 2004 and Exhibit D, Defendant SunTrust Bank's Responses to Plaintiffs' First Set of Requests for Admission, Nos. 154-156, dated January 14, 2005.)

### I. Request for Admission No. 103

Defendant SunTrust argues that whether SunTrust "referred" to Plaintiffs' confidential information was not of substantial

importance to the litigation because in order for Plaintiffs to
prevail on their breach of Confidentiality Agreement claim, the
Court had to find that SunTrust "used" Plaintiffs' confidential
information in a manner inconsistent with the terms of the
Confidentiality Agreement (which it did).  Defendant contends,
even if it had admitted request for admission no. 103, Plaintiffs
were still required to prove that SunTrust "used" the information
in a manner not permitted by the Confidentiality Agreement and
that Plaintiffs were entitled to damages as a result.

    While, it is not fair to characterize request for admission
No. 103 as of no substantial importance to the litigation, the
parties at trial and the Court in its Findings had to address
several interrelated issues to determine that SunTrust breached
the Confidentiality Agreement.  The Court in its Finding that
Defendant SunTrust "used" Plaintiffs' confidential information in
a manner prohibited under the Confidentiality Agreement, required
more than a finding that Defendant SunTrust "referred" to the
financial information during the course of the monetization
transaction.  The Court's analysis included determining whether
the information in the Credit Package was gained through the Long
Term Purchase Money Notes' ("LTPM Notes")[3] provision for

---

[3] To finance the Zacky acquisition, FF, FPF and Zorro Leasing LLC ("Makers") issued to Zacky Farms, four (4) long-term purchase money notes (the "LTPM Notes"), each of which matures on October 5, 2021. FF issued a LTPM Note to Zacky Farms in the principal amount of $92,726,438.00. Zorro Leasing LLC, issued two LTPM Notes in the amounts of $1,477,464.99 and $10,472,535.01. FPF issued one LTPM Note in the principal amount of $1,000,000. All four LTPM Notes were payable to Zacky Farms. Except for the principal amount and identity of the Makers, the terms of each

financial statements of Plaintiffs in the event of a monetization of the LTPM Notes, whether the information obtained fell under the provisions in the Credit Agreement, Section 10.8 (Integration Clause) and Section 10.11 (Confidentiality Clause), or whether the information, was obtained under the Confidentiality Agreement, and if so, whether it was "used" in violation thereof. SunTrust depended on a theory it reasonably believed it would prevail based on its legal argument that its decision to monetize the LTPM Notes was based on the existence of the Letters of Credit issued by the bank, with a required credit rating of at least "A", and backed by a syndicate of banks - not Plaintiffs' financial ability.

The Jan. 14 Order dedicates almost twenty pages to its analysis of this breach issue. SunTrust was not frivolous or unreasonable in its defense of and in its legal arguments advanced on this claim. SunTrust argued its Term Loans to the Trusts did not violate the Confidentiality Agreement because the agreement was superceded by Section 10.8 and 10.11 of the Credit Agreement, the financial information included or "used" in the Credit Package was not prohibited by the Credit Agreement, and its decision to monetize the LTPM Notes was based on the Letters of Credit not Plaintiffs' financial information. "The latter provision [of 37(c)] emphasizes that the true test under Rule 37(c) is not whether a party prevailed at trial but whether he acted reasonably in believing that he might prevail." Fed. R. Civ. P. 37(c) advisory committee's note (1970 Amendment).

---

LTPM Note are identical.

7

## II. Requests for Admission No. 154, 155 and 156

Plaintiffs argue that SunTrust was in possession of the original LTPM Notes, along with the allonges, for years, including the period during which SunTrust should have been investigating and providing accurate responses to requests for admission nos. 154-156. With knowledge of the law, and the pertinent facts at its disposal, Plaintiffs argue SunTrust knew, or could have known with reasonable inquiry, that (1) the LTPM Notes had not been endorsed by Zacky Farms to the Trusts, (2) there was room on the LTPM Notes to make such an endorsement (rather than using an allonge), and (3) the allonges were not properly affixed to the LTPM Notes. The only objection SunTrust made in its responses to requests for admission nos. 154-156 was that the requests defined "holder" two different ways: the definition contained in the New York U.C.C. and the definition "set forth in the Long Term Purchase Notes." SunTrust responded that it was the holder of the LTPM Notes, "as holder," as the term was used in paragraph 6 of the Letter of Credit. Plaintiffs argue that the Letters of Credit reference the New York U.C.C. and as referred to in the requests for admission, indicated, Defendant was aware of this fact but failed to investigate that SunTrust was the lawful "holder" of the LTPM Notes.

Plaintiffs contend that SunTrust failed to investigate and should not be rewarded for its lack of diligence. Service of the requests for admission created an obligation on SunTrust to look into the matter, and Rule 37(c)(2) levies financial responsibility on a party when "denied facts" are ultimately proven in the proceedings. "Parties may not view requests for

admission as a mere procedural exercise requiring minimally acceptable conduct. They should focus on the goal of the Rules, full and efficient discovery, not evasion and word play." *Marchand v. Mercy Medical Center*, 22 F.3d 933, 936 (9th Cir. 1994)

    SunTrust in response argues that it likewise had reasonable ground to believe that it would prevail on the "holder" issue as requested for admission in nos. 154, 155 and 156. Up until Mr. Llorens, counsel representing SunTrust during its monetization of the LTPM Notes, testified, specifically that he had not read the Credit Agreement, had not prepared any memoranda nor other writing to memorialize his advice, had not discussed nor investigated the history of paragraph 6 of the Letters Credit, nor performed legal research on the issues presented by paragraph 6 of the Letters of Credit, including researching California and New York law concerning endorsements for the LTPM Notes, it had reasonable ground to believe that its reliance on advice of counsel was sound and it had complied with necessary requirements for obtaining "holder" status.

    Plaintiffs liken the reliance on Mr. Llorens to the Ninth Circuit case of *Marchand* which held that there is not a per se rule that reliance on an expert opinion provides reasonable ground for a party to believe that it would prevail at trial. *Marchand v. Mercy Medical Center*, 22 F.3d 933, 937 (9th Cir. 1994) But there the court found that a belated admission by a physician that he failed to remove the cervical collar before completing a series of x-rays were obtained, had previously testified that to do so would be improper, therefore there was no

reasonable ground to deny negligence.  *Marchand* does not foreclose a party's reliance on advice of counsel if the reliance does not directly contradict other evidence and provides a reasonable ground for a party to believe he or she will prevail at trial.  Further, if Plaintiffs believed Defendant's response to requests for admission were incomplete or insufficient they should have moved to enforce under Rule 37.  Plaintiffs cannot convert alleged discovery failure into a basis for recovery of attorney's fees for the entire case.

SunTrust had engaged the services of highly sophisticated commercial counsel which it reasonably relied upon.  Mr. Llorens was a corporate partner at King & Spalding LLP, a national highly respectable firm.  There was no prior indication before trial that his knowledge of the law was incorrect or unreliable.  Further, the issue of allonge endorsements, which ultimately determined the breach of the letters of credit, was a complex commercial and negotiable instruments law issue.  SunTrust had a reasonable basis to advance its legal arguments on this claim as a defense at trial and in deciding to go forward with the monetization transaction, relying upon the advice of its independent counsel, although later proved to be erroneous.

These were disputed issues of fact and law.  The Defendant was not required to give up its defenses to admit liability, where it did not learn until trial of the failures of its outside counsel to adequately research the law and give accurate legal advice in a significant loan transaction.  The position advocated by Plaintiffs would foreclose the ability of a party to respond to discovery in good faith, albeit mistakenly, and produces the

10

undesireable consequence of chilling the exercise of asserting legal rights advanced in good faith, but justifiably mistaken belief.

**CONCLUSION**

For all the reasons provided, Plaintiffs' motion for an award of expenses and attorney's fees pursuant to Fed. R. Civ. P. 37(c)(2) is DENIED.

IT IS SO ORDERED.

**Dated:   May 23, 2008**                    /s/ Oliver W. Wanger
                                            UNITED STATES DISTRICT JUDGE