UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOSTER POULTRY FARMS, INC., and FRESNO FARMING, LLC, <br><br>     Plaintiffs, <br><br>   v. <br><br>SUNTRUST BANK, <br><br>     Defendant. <br>_____ <br>SUNTRUST BANK, <br><br>     Counter-Claimant, <br><br>   v. <br><br>FOSTER POULTRY FARMS, INC., and FRESNO FARMING, LLC, <br><br>     Counter-Defendants. <br>_____ | 1:04-cv-5513 OWW SMS <br><br>MEMORANDUM DECISION RE DEFENDANT'S MOTION TO SUPPLEMENT BRIEF AT TRIAL RE DISGORGEMENT DAMAGES |

   After the Findings of Fact and Conclusions of Law were entered in this case, (Doc. 214, entered on January 14, 2008, "Jan. 14 Order")[1], following a six-day bench trial on Plaintiffs' breach of contract claims, Plaintiffs submitted their calculation

---

   [1] This case came before the Court for trial commencing September 18, 2007, in Courtroom 3, the Hon. Oliver W. Wanger presiding.  The Court heard evidence during a six-day bench trial commencing September 18, 2007 through September 27, 2007 and entered its Findings of Fact and Conclusions of Law on January 14, 2008. (Doc. 214)  Please see the Jan 14 Order for the full description of the facts of this case.

1

of damages pursuant to the Jan. 14 Order.  The Jan. 14 Order concluded that Defendant breached the Confidentiality Agreement, entered between Defendant and Plaintiff Foster Farms, after finding that Plaintiff Foster Farms confidential financial information was used to facilitate Defendant SunTrust's 2002 Term Loans with the Trusts, in direct violation of the terms of the Confidentiality Agreement.  All profit was ordered disgorged that was earned from the 2002 Term Loans.  Plaintiffs' calculations were provided to aid in finding the amount of profit earned by SunTrust on the 2002 Term Loans, from the period of March 15, 2004 through October 9, 2006.

On January 21, 2008, Plaintiffs' filed their calculation of damages pursuant to the Court's order (interest and fees paid by the Trusts to SunTrust plus prejudgment interest, calculated separately for each quarterly interest payment). (Doc. 217, Damage Calculations)  The calculated damages equal $3,110,530.40, plus prejudgment interest of $979,344.87 (through January 22, 2008), for a total of $4,089,875.27, plus prejudgment interest of $852.20 for each day after January 22, 2008, up to and including the day judgment is entered.  Defendant provided no alternative to this prejudgment interest amount.  Defendant argues that the total amount of damages from the breach of the Confidentiality Agreement amount to the lesser figure of $740,850.19

The Court granted SunTrust's motion for clarification which permitted SunTrust to provide supplemental briefing on the amount of profit earned by SunTrust on the 2002 Term Loans to the Trusts, provided the briefing is based on the evidence admitted into evidence in the bench trial.  (Doc. 242, May 5 Order, filed

2

May 5, 2008) Defendant was permitted to respond and rebut the evidentiary calculation to provide a legally accurate calculation of disgorgement damages.  Defendant was permitted to offer alternate damage calculations so long as based on admitted evidence of record.  (Doc. 242)  Defendant SunTrust filed a brief on May 12, 2008, offering supplemental calculation of net profit. (Doc. 244, Brief)  Plaintiffs' filed a response to Defendant's supplemental calculation of net profit on May 19, 2008.  (Doc. 245, Reply)

The following are relevant findings of fact and conclusions of law from the Jan. 14 Order relating to disgorgement damages representing the interest earned by SunTrust on the 2002 Term Loans[2]:

> 196. During the period from August 14, 2002, the date the 2002 monetizing Term Loans were originally made to the Trusts to the date of the final repayment on October 9, 2006, SunTrust earned $6,004,886.97 in interest on the 2002 monetization Term Loans to the Trusts. Steven Butler, qualified as Plaintiffs damages expert at trial, testified to that amount. 9/20 Trial Tr., p. 64:15-19." Findings of Fact, ¶196.

> 117. Damages shall be calculated by taking the amount of interest and fees earned by SunTrust on the 2002 Term Loans from the date this lawsuit was filed, March 15, 2004 through the end of the term of the Letters of Credit on October 9, 2005." Conclusions of Law ¶ 117.

> 2. Plaintiff FPF shall recover as disgorgement and shall submit the calculation of damages awarded for any interest and fees earned on the 2002 Term Loan to the

---

[2] Two Term Loans provided to the Zacky Trust and the Brand Trust by SunTrust in August 2002 totaled approximately $85 million.  SunTrust loaned Zacky Trust $77,115,161.42, under a Term Loan by promissary note, dated as of August 14, 2002, (DX-201-1), and the Brand Family Trust $8,220,939.98, under a Term Loan by promissary notes, dated as of August 14, 2002 (DX-202-1).

3

>Trusts by Defendant SunTrust starting from the time of filing the lawsuit on March 15, 2004 through October 9, 2006." Conclusion, ¶ 2.

Defendant argues that the amount of profit earned on the 2002 Term Loans consists solely of the "margin interest" which represents the alleged spread between the cost of money loaned to the Trusts and the gross interest earned on the 2002 Term Loans from which Defendant asserts net profit is calculated.

>A.  <u>Financial Data JX-53</u>

Defendant supports its argument by reference to one page from JX-53, a joint exhibit admitted into evidence, in an attempt to support its argument. JX-53 consists of almost a thousand pages of financial documentation that appear to concern the interest and fees paid under the 2002 Term Loans, including bank statements from each of the Brand and Zacky Trusts, and spreadsheets listing margin and LIBOR interest breakdowns, and other financial documents.[3]  Neither party discussed or explained this exhibit at trial.  Defendant references page DEF 1881 of JX-53 to explain how JX-53 can be utilized to reach the net figure.

Defendant supports this argument by asserting, without providing proof or any other admissable evidence, the following:

>>Exhibit JX-53 is a multipage exhibit that contains detailed information with respect to all payments made by the two Trusts under the Term Loans. The information includes a separate breakdown of each interest payment by the Trusts into two components, "LIBOR interest" and "margin interest."  The total amount of margin interest paid to SunTrust on both Term Loans can be calculated from page DEF 1881 of JX-53 by adding together the

---

[3] JX-53 is a joint exhibit and all joint exhibits have been entered into evidence.  *See* 9/19 Trial. Tr., 59:4-13 and 119:14-19.

4

>           margin interest component of each interest payment
>           between March 15, 2004 and August 21, 2006. This
>           procedure, when performed for both loans, yields a
>           total margin interest received of $740,850.19

(Doc. 244, Defendant' Supplemental Calculation, p. 2)

No one from SunTrust testified on this point to establish that margin interest equals net profit.  Margin interest was not defined by any admissible evidence or explained at trial.  Neither was LIBOR interest.  The words "net profit" are not even mentioned in the record.  Nor did any expert testify on this point.  Plaintiffs also were not provided an opportunity at trial to rebut this evidence if true, because Defendant defended the case on the theories that no liability existed nor were any damages proved by Plaintiffs.

   B.   <u>Marcy Lyons' Trial Testimony</u>

   Defendant cites to trial testimony of Marcy Lyons, a SunTrust Director and Account Officer involved in the transactions at issue in the suit.  She testified regarding the structure of the monetization and the separate accounts set-up for payments on the 2002 Term Loans:

>           THE WITNESS. The way -- it was a highly structured
>           transaction, but the way it was structured is the way
>           the payments for repayment of the Zacky and the brand
>           loans would come from -- part of it would come from an
>           interest reserve account that had been set up so that
>           they had prefunded all of their interests spread.
>           Q. When you say they had prefunded --
>           THE WITNESS. I'm sorry, the Zackys and the Brands have
>           pretended [prefunded] an interest reserve account.
>           THE COURT: What was the approximate size of that
>           account?
>           THE WITNESS: It would have been 60 basis points times
>           five years. So is that 300,.
>           ---
>           THE COURT: And that reserve obviously was minuscule
>           compared to the amount that was being loaned to
>           monetize.
>           THE WITNESS: That's correct. That was just the spread

5

```
                portion of it. Then there was a LIBOR portion that was
                set up so that Fresno Farming was responsible to pay on
                the seller notes.  LIBOR flat to the Zackys and brands
                on a quarterly basis.
                Q. All right, and that was on 85 million, is that the
                amount
                of the monetization?
                THE WITNESS: No, they were -- Fosters was liable to pay
                LIBOR on the total amount of the notes out standing so
                it was 105 milled. That's correct.
                ---
                THE WITNESS: And so the LIBOR portion would come into a
                designated account and names of the Zackys and the
                Brands being held at SunTrust Bank. It was a blocked
                account.  And we were able to then take the money from
                the -- the LIBOR payment from the one account and the
                interest payment that had been prefunded from the other
                account to get our payments on a quarterly basis.
```

9/25 Trial Tr., p. 110:17-25, 111:1-3,10-21, 25, 112:1-6.

Plaintiffs argue that Ms. Lyons' testimony confirms "what has always been known in this litigation," and is not at issue here, which is "that, in structuring the monetization, the Trusts agreed to (1) re-direct payments that they were receiving from Foster Farms from an account held at Bank of America to a checking account held with SunTrust, and (2) pre-fund interest reserve accounts held with SunTrust."  (Doc. 245, 9:11-15.)  Ms. Lyons testimony does not explain the costs associated with SunTrust lending to the Trusts, nor provide a basis to compute the net profit gained on interest earned by SunTrust on the 2002 Term Loans.

    C.   <u>SunTrust's May 30, 2002 Credit Package</u>

Defendant also cites JX-7, SunTrust's May 30, 2002 Credit Package ("Credit Package"), to support its argument.  The Credit Package has a section titled, "Pricing and Fees" and states that pricing for the 2002 Term Loans is "LIBOR+60 Spread fixed over the life of the loans."  This does not provide a calculation of

SunTrust's actual costs and net profits on the 2002 Term Loans.

    D.    <u>Term Loan Agreements, Section 2.9</u>

Defendant also cites Section 2.9 of the 2002 Term Loans to provide more support on the costs of the loaned funds:

> Section 2.9. Inability to Determine Interest Rates.
>
> If prior to the commencement of any Interest Period,
>> (i) the Administrative Agent shall have determined (which determination shall be conclusive and binding upon the Borrower) that, by reason of circumstances affecting the relevant interbank market, adequate means do not exist for ascertaining LIBOR for such Interest Period, or
>> (ii) the Administrative Agent shall have received notice from the Required Lenders that the Adjusted LIBO Rate does not adequately and fairly reflect the cost to such Lenders (or Lender, as the case may be) of making, funding or maintaining [our emphasis] their (or its, as the case may be) Eurodollar Loans for such Interest Period ...

DX 201-1 and DX 202-1, 2002 Term Loan Agreements.  The section titled, "Inability to Determine Interest Rates," Plaintiffs argue appears to address the potential situation in which the "lenders" (i.e., SunTrust) cannot determine LIBOR for "Eurodollar Loans." The definition for "Eurodollar Loan" in DX-201-1 and DX-202-1 reads: "'Eurodollar Loan' refers to whether the Term Loan bears interest at a rate determined by reference to the Adjusted LIBO Rate."  "Adjusted LIBO Rate," in turn, is defined as "the rate per annum obtained by dividing (i) LIBOR for such Interest period by (ii) a percentage equal to 1.00 minus the Eurodollar Reserve Percentage."  Section 2.9 provision contains a complex formula to address the contingency of the inability to determine interest rates, it does not provide any further clarity on nor a basis to ascertain the net profit earned by SunTrust on the 2002 Term Loans.  The definitions of the terms in the provision do not

equate LIBOR with "total cost" to SunTrust on the 2002 Term Loans, nor does the provision constitute any further evidence of "margin interest" equaling "net profit."

The reference to "cost" in relation to the "Adjusted LIBO Rate" expresses the lenders' concern about the Adjusted LIBO rate adequately and fairly reflecting the cost to Lenders, presumably the cost of lending. However, nothing in the trial record links "LIBOR" cost with SunTrust's total cost on the 2002 Term Loans or, provides a basis to calculate what SunTrust's net profits were on the 2002 Term Loans. The word "profit" does not even appear in Section 2.9, and there is no indication that the section provides a methodology for computing profit. Section 2.9 of the Term Loan Agreements does not provide grounds to ascertain SunTrust's net profit on the monetization transaction. Appropriate questions to and testimony from key SunTrust witnesses and an expert, could have presented this theory of defense and mitigation of damages to support SunTrust's late-surfacing theory, however no rebuttal evidence was provided. *See Merritt, Chapman & Scott Corp. v. Guy F. Atkinson Co.,* 295 F.2d 14, 17-18 (9th Cir. 1961) (finding witness testimony not to be based on speculation, surmise or conjecture and no rebuttal evidence provided, nor objection, therefore no prejudicial error).

As Plaintiffs correctly assert, neither the trial exhibits nor the testimony cited by Defendant provides a basis for establishing that "margin interest" equals "net profit." Plaintiffs provided credible evidence from their damages expert, which Defendant did not rebut, seriously challenge or discredit.

**Defendant offered no evidence to reduce or limit damages. Plaintiffs' evidence on damages suffices to establish the net profit to be disgorged from Defendant SunTrust.**

## CONCLUSION

**For the reasons set forth above and in the Court's Findings of Fact and Conclusions of Law (Doc. 214), Defendant's motion to supplement evidence at trial re: disgorgement damages is DENIED. Judgment shall be entered as follows:**

**1. Plaintiff Fresno Farming LLC is awarded a judgment of nominal damages in the amount of $100.00 for Defendant SunTrust's breach of contract under the Letters of Credit, for the first claim of Plaintiffs' First Amended Complaint.**

**2. Based upon the calculations submitted by Plaintiffs detailing the interest and fees earned by Defendant SunTrust under the 2002 Term Loan from March 15, 2004 through October 9, 2006, which the Court has reviewed and accepts, Plaintiff Foster Poultry Farms, Inc. is awarded judgment in its favor in the total amount of $4,089,875.27 for Defendant SunTrust's breach of contract under the Confidentiality Agreement pursuant to the first claim of Plaintiffs' First Amended Complaint. This total figure represents $3,110,530.40 in damages and $979,344.87 in accrued prejudgment interest.**

**3. Plaintiff Foster Poultry Farms, Inc. is also awarded $852.20 in pre-judgment interest per day from January 22, 2008 up to and including the date of the judgment.**

**The Clerk of the Court is directed to file the accompanying judgment.  Pursuant to Local Rule 54-292, Plaintiffs may file a**

bill of costs within 10 days following the date of entry of the date hereof.  Post-judgment interest shall accrue after entry of the judgment in accordance with 28 U.S.C. § 1961.

IT IS SO ORDERED.

Dated:   **July 11, 2008**                             **/s/ Oliver W. Wanger**
                                         UNITED STATES DISTRICT JUDGE